## STATE OF CONNECTICUT *v.* EDWIN ORTIZ
### (5500)

DALY, O'CONNELL and NORCOTT, Js.

Argued November 19, 1987—decision released May 24, 1988

*James V. Guarino,* special public defender, with whom was *Susan P. Geenty,* for the appellant (defendant).

*Mitchel S. Brody,* deputy assistant state's attorney, with whom, on the brief, was *John T. Redway,* state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (3), assault in the second degree in violation of General Statutes § 53a-60 (a) (2), and robbery in the first degree in violation of General Statutes § 53a-134 (a) (3).

On appeal, the defendant claims that the trial court erred: (1) in determining that there was sufficient evidence to establish the defendant guilty beyond a reasonable doubt; (2) in denying the defendant's motion to dismiss; (3) in admitting a certain stick into evidence; (4) in denying the defendant's motion to suppress a wallet found on the ground; and (5) in failing to instruct the jury on the lesser included offenses of robbery in the third degree and larceny in the second degree.

The jury could reasonably have found the following facts. On July 29, 1985, at approximately 1 p.m., Thadeuz Rzap and Stephen Shields were released from Connecticut Valley Hospital following their treatment for alcoholism. The two men embarked on a drinking escapade which led them wandering throughout Middletown. At approximately 1 a.m., they fell asleep in a grassy portion of Spears Park in Middletown.

Rzap was awakened when he and Shields were attacked by a Hispanic male and a black male. Both Rzap and Shields were beaten with a black stick, kicked and punched. As the attackers left their victims, a striking sound was heard in the vicinity of a wrought iron fence after a throwing movement by the taller man. Rzap fled from the park and called the police at a nearby newsstand. Rzap suffered welts to his arms and body with bruises on his forehead, while Shields was

rendered unconscious and suffered a brain injury. Rzap's wallet, which was attached to a chain, and his sneakers were taken from him.

Officer Graig Elkin of the Middletown police department responded to the call by meeting Rzap at the newsstand and proceeded to Spears Park. At the scene, Elkin found Shields unconscious and unresponsive. A stick was discovered nearby, leaning against one of the walls of the park. As Officer Joseph Waite proceeded to the scene, he spotted two individuals, a black male and a shorter Hispanic male, who matched the descriptions provided by Elkin on the radio. Waite stopped the two individuals, identified as Michael Foster and the defendant, and patted them down. During the patdown, Waite discovered a chain running from the defendant's belt to a square object in his pocket. Waite proceeded to take the square object out of the defendant's pocket and, after looking through the object, which he determined was a wallet, he returned it. At this point, Officer David Cristiana arrived and observed Foster pulling his hands away from some bushes. Cristiana pulled a pair of sneakers out of the bushes and brought them to Spears Park where Rzap identified them as the ones taken from him during the assault.

The defendant and Foster agreed to accompany Waite to Spears Park. After discussing the missing wallet with Rzap, Waite again patted down the defendant but did not feel either the chain or square object. Ten minutes later, Waite returned to the scene of the first patdown and found a wallet on the ground with a chain attached to it five feet from the patdown.

At trial, Rzap identified the wallet as the one taken from him during the assault. The state introduced photographs of the bushes where the sneakers had been found, and of Spears Park. In addition to the photo-

graphs, the state introduced into evidence the stick found near the scene of the crime.

## I

In his first claim of error, the defendant argues that there was insufficient evidence to support the jury's guilty verdict of assault in the first degree against Shields and assault in the second degree and robbery in the first degree against Rzap. The defendant maintains, inter alia, that no identification of him was established, that there was a failure to connect the stick with the offenses and that there was a lack of causation between Shield's injury and the attack.

## A

The defendant was convicted of assault in the first degree in violation of General Statutes § 53a-59 (a) (3)[1] and 53a-8,[2] with respect to victim Shields. " 'When a claim on appeal challenges the sufficiency of the evidence, we undertake a two part task. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' [*State* v. *Simino,* 200 Conn. 113, 116, 509 A.2d 1039 (1986)]." *State* v. *Summerville,* 13 Conn. App. 175, 184–85, 535 A.2d 818 (1988).

[1] General Statutes § 53a-59 (a) provides: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."

[2] General Statutes § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

Applying this standard to the record before us, we conclude that the evidence reasonably supports the jury's conclusion. An eyewitness testified that both victims were kicked and beaten by a tall black male and a shorter Hispanic male. The defendant and Foster were picked up in the vicinity of Spears Park shortly after the incident. It was a reasonable inference that the defendant was present at the assault since the sneakers and wallet were at the scene where he was originally stopped by the police. The state did not have to connect the stick with the defendant since it was not a necessary element of the offense. Likewise, the state did not have to prove that the defendant brandished the stick, even if it were an element of the offense, since the defendant was being charged as an accessory.

### B

The defendant was convicted of assault in the second degree in violation of General Statutes § 53a-60 (a) (2)[3] and robbery in the first degree in violation of General Statutes § 53a-134 (a) (3)[4] with respect to victim Rzap. Rzap sustained welts on his back and arms with bruises on his forehead from being punched, kicked and hit with a stick-like object. In addition to being assaulted, Rzap was robbed of his wallet and sneakers. It is important to note that the defendant was charged as an accessory to the assault and, therefore, the state did not have to prove that he actually beat the victim with the stick. Moreover, it was not necessary to prove that the defendant wielded the stick during the robbery, because

---

[3] General Statutes § 53a-60 (a) provides: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[4] General Statutes § 53-134 (a) provides: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

the accessory statute applies to any participant in the crime. Using the above standard in reviewing the sufficiency of evidence, we conclude that the jury could readily have inferred that the defendant was guilty of the crimes charged.

## II

The defendant's second claim of error entails a speedy trial issue. The defendant claims that the trial court erred in failing to dismiss the matter due to the state's failure to prosecute in a timely manner. The defendant was arrested and incarcerated on July 30, 1985. An information was filed on July 31, 1985. On April 8, 1986, the defendant filed a motion to dismiss pursuant to Practice Book § 956B (b)[5] claiming that eight months had elapsed since his arrest without a trial.

The trial court, on May 20, 1986, denied the motion determining there were eighty-seven days which could be excluded in calculating the eight months.[6] The defendant argues that retroactive computation of time was improper and, additionally, that only the actual days when the hearings were held should be calculated.

[5] Practice Book § 956B (b) provides: "Except as otherwise provided herein and in Sec. 956C, the trial of a defendant charged with a criminal offense on or after July 1, 1985, shall commence within twelve months from the filing of the information or from the date of the arrest, whichever is later.

"The trial of such defendant shall commence within eight months from the filing of the information or from the date of the arrest, whichever is later, if the following conditions are met:

"(1) the defendant has been continuously incarcerated in a correctional institution of this state pending trial for such offense; and

"(2) the defendant is not subject to the provisions of Gen. Stat. § 54-82c."

[6] The state claimed that the following days were excludable:

The defendant's pretrial motions dated September 13, 1985, and acted on October 21, 1985–38 days; the defendant's examination motion October 21, 1985, and acted on November 19, 1985–30 days; the defendant's motion to suppress February 3, 1986, and acted on February 10, 1986–11 days; and the defendant's motion for speedy trial April 11, 1986, and acted on April 21, 1986–11 days. The total arrived at by the state is 90 days.

Practice Book § 956C provides that any "delay resulting from the hearing on any pretrial motion" is excluded in computing the time within which a trial shall commence under § 956B. Practice Book § 6 provides that the rules are to be liberally construed. The rules, however, do not provide that excludable time notations be made simultaneously by the trial court or be waived. Moreover, there is nothing in the rules that limits delays resulting from a hearing to the hearing time itself. In the interest of reading the rules liberally, we hold that the trial court did not err in denying the defendant's motion to dismiss.

## III

The defendant's third claim of error is that the trial court erred by improperly admitting into evidence a stick found near the scene of the crimes charged. Specifically, the defendant argues that the introduction of the stick was irrelevant and prejudicial. Evidence is relevant if it " 'tends to establish the existence of a material fact or to corroborate other direct evidence in the case.' " *State* v. *Fritz*, 204 Conn. 156, 168, 527 A.2d 1157 (1987). Determinations of relevancy are within the broad discretion of the trial court and will not be overturned in the absence of clear abuse of discretion. Id., 167–68. In making such determinations, a trial court is not required to find as a prerequisite to admissibility that evidence is conclusively linked to other evidence. "Evidence is not rendered inadmissible simply because it is not conclusive. It is admissible if it tends to support a relevant fact even in a slight degree, so long as it is not prejudicial or merely cumulative. . . . The defendant's objection goes essentially to the weight of the evidence rather than to its admissibility." *State* v. *Morrill*, 197 Conn. 507, 548–49, 498 A.2d 76 (1985).

In the present case, the introduction of the stick into evidence was necessary to support "relevant facts" in the crimes charged. The defendant was convicted of committing assault in the second degree and robbery in the first degree. Both of the crimes share the common element of the use of a dangerous instrument. Rzap testified that he was struck repeatedly with a "black stick." This testimony is evidence of the dangerous instrument element of the crimes. Moreover, the stick is relevant in that it corroborates Rzap's testimony.

Furthermore, the admission of the stick into evidence was not unduly prejudicial. The defendant's argument that the stick, because it is real evidence, has a greater impact on the jury without any probativeness, is incorrect. It is well established that relevant evidence may be excluded if its capacity to prejudice outweighs its probativeness. *State* v. *Ibraimov*, 187 Conn. 348, 352, 446 A.2d 382 (1982). "To the extent that the evidence tended to prejudice the defendant, it was for the trial court, in the exercise of judicial discretion, to decide whether the probative value of the testimony outweighed the prejudice likely to result from its admission. *State* v. *Turcio*, 178 Conn. 116, 129, 422 A.2d 749 (1979)." *State* v. *Briggs*, 179 Conn. 328, 333, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 869 (1980). Our Supreme Court has adopted four situations from C. McCormick, Evidence (2d Ed.) § 185, pp. 439–40, in which the potential prejudicial effect of a particular piece of evidence would suggest its exclusion. "These are: (1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defend-

ant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." *State* v. *DeMatteo,* 186 Conn. 696, 702–703, 443 A.2d 915 (1982). None of these dangers is present here. The defendant's assertion that the admission of the stick created a side issue is incorrect because the stick merely corroborated other evidence. See *State* v. *Ruth,* 181 Conn. 187, 435 A.2d 3 (1980).

## IV

In his fourth claim of error, the defendant argues that Waite should not have been allowed to testify as to the discovery of the wallet lying on the ground within five feet of the initial stop of the defendant. The trial court, after hearing the defendant's motion to suppress any testimony regarding the observation of the wallet, the removal and return of the wallet to the defendant, questioning about the wallet, and the discovery of the wallet, ruled that the initial patdown was legal, but the subsequent search was improper. The result of the court's ruling was that the wallet was admissible, but Waite's taking of the wallet out of the defendant's pocket was inadmissible. Specifically, the defendant claims that the police found the wallet only by exploiting an illegal search, making the wallet tainted and that there was no evidence that the wallet would have been inevitably discovered.

"Under the exclusionary rule, evidence must be suppressed if it is found to be the 'fruit' of prior police illegality. *Wong Sun* v. *United States,* supra, 485. All evidence is not, however, a 'fruit of the poisonous tree' simply because it would not have been discovered but for the illegal action of law enforcement officials. Id., 487–88; see *State* v. *Villafane,* 171 Conn. 644, 655, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977), overruled in part on other grounds, *State* v. *Stepney,* 191 Conn. 233, 464 A.2d 758

(1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). 'Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." ' *Wong Sun* v. *United States,* supra, 488, quoting Maguire, Evidence of Guilt (1959) p. 221." *State* v. *Cates,* 202 Conn. 615, 619–20, 522 A.2d 788 (1987).

The police would have discovered the wallet "independent[ly] of any constitutional violation." *Nix* v. *Williams,* 467 U.S. 431, 443, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). The inevitable discovery rule as set forth in *Nix* and followed by our Supreme Court in *State* v. *Badgett,* 200 Conn. 412, 433, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986), holds that evidence is admissible if it would have been discovered regardless of the illegal search. "To qualify for admissibility the state must demonstrate that the lawful means which made discovery inevitable . . . were being actively pursued *prior* to the occurrence of the constitutional violation." (Emphasis in original.) Id. The United States Supreme Court stressed in *Nix* that the inevitable discovery rule is fair in that it "plac[es] the State and the accused in the same positions they would have been in had the impermissible conduct not taken place." *Nix* v. *Williams,* supra, 447.

In the present case, it is clear that Waite believed that the defendant possessed a wallet as a result of the original, legal patdown. Waite's belief came from the original patdown when he felt the chain and square object, and independent of the subsequent illegal search. When the wallet disappeared it was logical for Waite to retrace his steps to where he had last encountered it. Furthermore, the sneakers were discovered

prior to the illegal search and the police in photographing the area of the original patdown would have discovered the wallet by lawful means. As in *United States* v. *Crews,* 445 U.S. 463, 472, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980), "the toxin in this case was injected only after the evidentiary bud had blossomed; the fruit served at trial was not poisoned."

V

In his final claim of error, the defendant argues that the trial court erred in failing to instruct the jury on the lesser included offenses of robbery in the third degree[7] and larceny in the second degree.[8] A criminal defendant is entitled to a charge on a lesser offense, if and only if, the following conditions are satisfied: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980).

The defendant's argument that an instruction on third degree robbery should have been given is incorrect. Despite getting past the first two prongs of the

---

[7] General Statutes § 53a-136 (a) provides: "A person is guilty of robbery in the third degree when he commits robbery [as defined in § 53a-133]."

[8] General Statutes § 53a-123 (a) provides: "A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (3) the property, regardless of its nature or value, is taken from the person of another . . . ."

test, the defendant has failed to meet the requirements of the fourth prong. The defendant claims that the dangerous instrument (i.e., the stick) was never sufficiently identified and connected with the offenses. Furthermore, the defendant alleges that there was no evidence of the use of a dangerous instrument. The use of the stick constitutes a dangerous instrument which distinguishes first degree robbery from third degree robbery. Moreover, an examination of the record indicates that the robbery did not occur without the use of this dangerous instrument. See *State* v. *Fernandez,* 5 Conn. App. 40, 45–46, 496 A.2d 533 (1985).

Although the defendant requested a lesser included offense request on larceny in the second degree, he based the request on simple larceny. Robbery in the first degree, the actual charge, entails simple larceny. Larceny from the person is a separate and distinct offense from that of simple larceny. Second degree larceny requires an actual trespass to the person of the victim. *In re Juvenile Appeal (84-4),* 1 Conn. App. 642, 645, 474 A.2d 485 (1984). One could, however, commit larceny in the first degree without committing a trespass to the victim. Therefore, the second prong of *Whistnant* is not satisfied and the trial court did not err in failing to charge as requested.

There is no error.

In this opinion the other judges concurred.

