[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO EXCLUDE TEST RESULTS AND MOTION TODISMISS.
Facts
On July 11, 1995, the defendant, John Fuessenich, pleaded guilty to three counts of tampering with evidence in violation of General Statutes § 53a-115 in the Litchfield Superior Court. The Honorable Walter M. Pickett, Jr. sentenced the defendant to four years, execution suspended, with three years of probation. On July 12, 1995, the defendant met with his assigned probation CT Page 2107 officer, who required the defendant to sign a form setting forth the conditions of his probation and advising him of his rights and duties with respect to his probation.[1] The following day, the clerk of the court issued a probation order requiring the defendant, inter alia, to "abide by the written statement of the conditions of probation furnished by the probation officer and the instructions given regarding the same."[2] On September 26, 1995, defendant's probation officer applied for a warrant for the defendant's arrest based on an alleged violation of his probation. Specifically, the probation officer alleged that the defendant, who had been required to submit to urinalysis on August 14, 1995, tested positive for cocaine use in violation of the probation condition that he "not violate any criminal law." The defendant is now charged with violating the terms of his probation.
On February 9, 1996, the defendant filed a motion to dismiss the violation of probation charges and to exclude evidence of the test results, arguing in his memoranda of law that there was a defect in the institution of prosecution and that the probation officer both exceeded his statutory authority and violated defendant's state and federal constitutional rights in requiring him to submit to urinalysis.[3] In support of his argument, the defendant points out that the court itself did not impose drug testing in its order, that there is no evidence in the sentencing record relating to drug use or abuse by the defendant, and that drug testing is not otherwise reasonably related to his rehabilitation for the crime of tampering with evidence. Thus, according to the defendant, the probation officer had no authority to impose drug testing upon him as a condition of his probation.
In its opposition brief, the state argues that the probation officer was within his statutory authority, pursuant to General Statutes § 53a-30(b), in requiring the defendant to submit to drug testing and/or urinalysis because there was ample information before the sentencing court indicating drug use by the defendant such that the court could have required drug testing and because the drug testing requirement imposed by the probation officer is not inconsistent with the court's order.[4]
 I. A.
CT Page 2108
The defendant has moved to dismiss the case against him, pursuant to Practice Book § 815(1), on the ground that requiring him to submit to urinalysis in violation of statutory authority deprived him of his constitutional right to be free from unreasonable searches and seizures and constitutes a defect in the institution of prosecution. The defendant has also moved to exclude all evidence regarding the urinalysis test and results thereof. Since the defendant moves to exclude the admission of evidence based on alleged violations of the federal and state constitution, the court will treat the evidentiary portion of the defendant's motion as a motion to suppress pursuant to Practice Book § 821.
Practice Book [§] 815 authorizes a motion to dismiss . . . for defenses or objections based on defects in the initiation of a prosecution, absence of jurisdiction, the presence of constitutional or statutory error that might obviate the necessity for a trial, or the lack of cause or evidence to justify the bringing or continuing of prosecution. It also contains a provision that defenses or objections based on `any other grounds' may be raised by a motion to dismiss." State v.Talton, 209 Conn. 133, 138-39, 547 A.2d 543 (1988). "The tenor and apparent purpose of 815 is to authorize a motion to dismiss by a defendant for the specific reasons stated in that section or for any other grounds that constitute defects inherent in the initiation or prosecution of a criminal case that would prevent the state from successfully concluding a prosecution that it desires to continue." Id., 139.
A motion to suppress potential testimony or other evidence shall be granted by the judicial authority "if he finds that suppression is required under the constitution or laws of the United States or the state of Connecticut." Practice Book § 821. Practice Book § 821 "incorporates the existing standards of search and seizure jurisprudence, as set forth by [the Connecticut Supreme] [C]ourt, our Appellate Court and the United States Supreme Court, leaving to trial courts the task of determining whether suppression is required in a particular case." State v. Marsala, 216 Conn. 150, 156, 579 A.2d 58 (1990). "If the provisions of either [the state or federal] constitution, as currently interpreted, require the suppression of any evidence seized, 821 merely directs the judicial authority to carry forth that suppression." Id. CT Page 2109
 B.
General Statutes § 53a-30[5] sets forth the conditions of probation which may be imposed by a sentencing court and by the Office of Adult Probation. Subsection (a) applies to the court, and provides, in pertinent part: "When imposing sentence of probation . . . the court may, as condition of the sentence, order that the defendant: (2) undergo medical or psychiatric treatment and remain in a specified institution, when required for that purpose; . . . (7) refrain from violating any criminal law of the United States, this state or any other state . . . [.]" Subsection (b) of the statute, which applies to the Office of Adult Probation, provides: "When a defendant has been sentenced to a period of probation, the Office of Adult Probation may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) which are not inconsistent with any conditions actually imposed by the court."
The July 13, 1995 probation order issued by the court provides, in pertinent part: "It is ordered and adjudged that: . . . (b) Said defendant during the probationary term fixed shall abide by the written statement of the conditions of probation furnished by the probation officer and the instructions given regarding the same." There were no other conditions listed in the space provided for "special conditions of probation". The probation office's form, signed by the defendant on July 12, 1995, provides, in pertinent part: "(7) Submit to any medical and/or psychological examination, urinalysis, and/or counselling sessions as required by the Court and submit to any alcohol and/or drug testing required by the Probation Officer." (Emphasis added.) The form also stated, inter alia, that the defendant could be arrested and his probation revoked by not complying with the conditions of probation listed on the form.
The defendant argues that General Statutes § 53a-30
precluded the probation officer from imposing the condition that the defendant submit to urinalysis because the court itself did not require drug testing as a condition of defendant's probation, because there was no evidence in the record of drug use by the defendant, and because such a requirement otherwise has no reasonable relationship to the crime of tampering with evidence for which he was charged. Thus, the defendant argues that the probation officer exceeded his statutory authority by requiring the defendant to submit to drug testing and/or urinalysis, as it CT Page 2110 was not a requirement the court "could have imposed".[6]
The state argues that the sentencing court had before it ample information regarding the use and/or abuse of drugs by the defendant, and that the court therefore "could have" imposed drug testing/urinalysis upon the defendant at the time of sentencing. If the court "could have" imposed drug testing upon the defendant, the Office of Adult Probation could thereafter have imposed such testing as long as it was "not inconsistent with any conditions actually imposed by the court." General Statutes § 53a-30(b). In support of its contention that the court had ample information concerning drug use by the defendant at the time of sentencing and could therefore have imposed drug testing upon him, the state claims the court should have known about defendant's drug use because the same court had presided over defendant's earlier murder trial at which the state's theory was that defendant Fuessenich killed the victim because he was going to divulge the defendant's drug involvement to the state police.[7] Thus, the state contends the court knew or should have known about defendant's alleged drug use when it sentenced the defendant at a later date on the tampering charges and therefore "could have" required drug testing as a condition of probation. Thus, the state posits that because the court "could have" imposed drug testing, the probation officer was within his statutory powers, pursuant to General Statutes § 53a-30(b), when he required a condition of probation "which the court couldhave imposed under subsection (a)" of the statute and which was not inconsistent with any condition actually imposed by the court. (Emphasis added.)
Upon examination of the sentencing court record, the court finds that there is no evidence of any drug use or abuse by the defendant. Indeed, there is no mention of drugs in any context, and the state apparently did not raise such an issue at the hearing.[8] Although the state claims that there was evidence in defendant's murder trials that he was involved with drugs, this court presided only over defendant's first trial, at which no information concerning drug use was admitted into evidence. The state may be correct in asserting that its theory was that the defendant killed the victim because the victim was going to divulge defendant's drug involvements. However, the state's theory was just that — only a theory. There was no evidence admitted which would actually support the state's proposition. Therefore, there was not ample evidence before the court at defendant's first murder trial concerning drugs or drug use by CT Page 2111 the defendant. Moreover, drug testing is generally not "reasonably related" to the crime of tampering with evidence, and does not, as other crimes perhaps would, raise an inference of drug abuse by the offender.
The state also contends that urinalysis falls within the "medical treatment" requirement which could have been imposed by the court pursuant to General Statutes § 53a-30(a)(2). In assessing the meaning of the term "medical treatment", the court is guided by well defined principles of statutory interpretation which require it "to ascertain and give effect to the apparent intent of the legislature." State v. Blasko, 202 Conn. 541, 553,522 A.2d 753 (1987). If the language of the statute is clear and unambiguous, it is assumed that the language expresses the intention of the legislature, and the court need inquire no further into legislative intent. State v. Burns, 38 Conn. App. 8,12, 658 A.2d 163 (1995). In such a case, as here, the court will simply accord the words expressed in the statute their plain and ordinary meaning. Id. The term "treatment", as used in the context described in the statute, is commonly defined as: "The application of remedies with the object of effecting a cure." American Heritage Dictionary (Ed. 1981). Thus, when the term "treatment" is given its plain and ordinary meaning, the court cannot agree that the extraction and testing of urine falls within the definition of medical "treatment". Accordingly, the court finds the state's argument that urinalysis falls within the definition of "medical treatment" to be without merit.
Based on the foregoing, the court finds that the probation officer exceeded his statutory authority, under General Statutes § 53a-30(b), in requiring the defendant to submit to urinalysis as a condition of his probation.[9] This condition was not imposed by the court, as there was no evidence of drug use before the court at the sentencing hearing. Furthermore, this was not a condition the court "could have" imposed, and it does not constitute "medical treatment" within the meaning of the statute.
 C.
Having found that the results of defendant's urinalysis were obtained by the probation officer in excess of his statutory authority under General Statutes § 53a-30(b), the next determination must be whether requiring the defendant to submit to urinalysis, in excess of statutory authority, violated his CT Page 2112 right to be free from unreasonable searches and seizures under the fourth amendment to the United States Constitution or ArticleI §§ 7 or 8 of the Connecticut Constitution. If the imposition of urinalysis violated defendant's constitutional rights, Practice Book § 821 may require that the urinalysis evidence be suppressed.
It is clear that the state-compelled collection and testing of urine constitutes a "search" subject to the demands of the search and seizure provisions of the federal and state constitutions. See Vernonia School Dist. 47J v. Acton,
515 U.S. ___, 132 L.Ed.2d 564, 574, 115 S.Ct. 2386 (1995); Skinner v.Railway Labor Executives' Assn., 489 U.S. 602, 617,103 L.Ed.2d 639, 109 S.Ct. 1402 (1989); State v. Smith, 207 Conn. 152, 173,540 A.2d 679 (1988).
"Under both the federal and state constitutions, a warrantless search is per se unreasonable, subject to a few well defined exceptions." State v. Santiago, 27 Conn. App. 741, 745,610 A.2d 666, cert. denied, 223 Conn. 906, 610 A.2d 179 (1992). See also State v. Joyce, 229 Conn. 10, 24-25, 639 A.2d 1007
(1994). "Under such circumstances, the state bears the burden of proving that an exception to the warrant requirement exists."State v. Vargas, 34 Conn. App. 492, 496, 642 A.2d 47 (1994).
The State of Connecticut Office of Adult Probation did not have a warrant when it required the defendant to submit to urinalysis, and did not have a warrant when it had defendant's urine tested for the presence of illegal narcotics. Thus, the "search" of defendant's urine was per se unreasonable, and the state has presented no argument that this search was permitted under one of the well defined exceptions to the warrant requirement. See State v. Santiago, supra, 27 Conn. App. 745.
Notwithstanding the general rule relating to warrantless searches, as outlined above, some warrantless searches have been deemed permissible where "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." Vernonia School Dist. 47J v. Acton,
supra, 132 L.Ed.2d 574. See also Griffin v. Wisconsin, 483 U.S. 868,873, 97 L.Ed.2d 709, 107 S.Ct. 3164 (1987). A state's operation of its probation system has been held to present such a "special need", justifying, in certain circumstances, a search and seizure in the absence of a warrant. See Griffin v.Wisconsin, supra, 107 S.Ct. 3164, 3167-68. See also State v.CT Page 2113Smith, supra, 207 Conn. 164-65. However, in such circumstances, the degree of impingement upon a probationer's privacy is "not unlimited". State v. Smith, supra, 207 Conn. 165.
Any restriction upon a probationer's constitutional rights "can be justified only to the extent actually required by legitimate demands of the probation process in any given case."State v. Smith, supra, 207 Conn. 166. Thus, a probationer's privacy expectations "may be diminished only to the extentnecessary for his reformation and rehabilitation." (Emphasis added.) Id. Central to this determination is whether the condition imposed on the probationer is "reasonably related" to the purposes of the probation. Id., 170.
Probation is the product of a legislative scheme, and "[t]he significant role of statutes and the broad discretion usually accorded courts in administering the probation process means not only that statutory limitations must be observed but also the impact of constitutional norms must be carefully evaluated." Id., 167. Because the legislature chose to have the Office of Adult Probation carry out a part of the probation process, as provided in General Statutes § 53a-30(b), the limitations and demands recited above apply with equal force to that Office.
As discussed above, in requiring the defendant to submit to urinalysis, defendant's probation officer exceeded the limitations set forth in General Statutes § 53a-30. State v.Smith, supra, 207 Conn. 167. Moreover, as discussed above, the probation officer imposed a probation condition upon the defendant which was not "reasonably related" to the purposes of his probation. Thus, the condition that defendant submit to urinalysis diminished his privacy expectations beyond the "extent necessary for his reformation and rehabilitation." Id., 166. Accordingly, the search and seizure of defendant's urine was an unreasonable search and seizure in violation of Article I, § 7 of the Connecticut Constitution.[10]
Under the exclusionary rule, evidence found to be the fruit of a prior illegal or unconstitutional search or seizure must be suppressed by the court. State v. Ortiz, 14 Conn. App. 493, 501,542 A.2d 734 (1988). Thus, all evidence against the defendant which was derived from the illegal search and seizure of his urine must be suppressed under the "fruit of the poisonous tree" doctrine, unless the state has shown that it was "sufficiently distinguishable to be purged of the primary taint." Id., 502. See CT Page 2114 also State v. Federici, 179 Conn. 46, 61, 425 A.2d 916 (1979). Here, the evidence against the defendant is directly derived from, and based entirely upon, the illegal search and seizure of his urine. As such, there can be no argument that it is sufficiently divorced from the prior illegal search as to warrant an exception to the suppression requirement.
Based on the foregoing, the court finds that the evidence against the defendant was obtained in excess of statutory authority and in violation of his right to be free from unreasonable searches and seizure under Article I, § 7 of the Connecticut Constitution. Accordingly, the court is required to grant the defendant's motion to suppress that evidence pursuant to Practice Book § 821. State v. Marsala, supra, 216 Conn. 156.
 D.
The court is unable to grant the defendant's motion to dismiss pursuant to Practice Book § 815(1). Research has failed to reveal caselaw supporting defendant's position that the foregoing circumstances constituted a "defect in the institution of prosecution", and this issue was not briefed adequately. The only grounds under which defendant's motion to dismiss could be granted are Practice Book §§ 815(5) or (9). However, the defendant is prohibited from moving to dismiss on those grounds because he was arrested pursuant to a warrant. Practice Book § 816.
 II
Based on the foregoing, the defendant's motion to exclude/suppress is granted, and his motion to dismiss is denied without prejudice.
PICKETT, J.