[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant, Louis Rivera, filed a motion to suppress evidence consisting of 180 glassine packets containing heroin seized by the Waterbury police department on May 13, 1996, at approximately 1 p. m.
The court finds the following facts. Detective Patrick Moynihan is an 8 1/2 year veteran of the Waterbury police department and a member of its Vice and Intelligence Division. He was assigned to the Tactical Narcotics Team for six years and over his career has participated in thousands of drug investigations, including sting operations and undercover drug buys. He has had specialized training and experience with drug investigations, surveillances and search and seizure issues.
Approximately two weeks before May 13, 1996, Detective Moynihan received information from a confidential informant regarding the defendant. The informant claimed that the defendant was a "good-size drug dealer in the city of Waterbury" and that his nicknames were "666" and "Luigi." The informant further stated that the defendant drove a blue Toyota Corolla vehicle bearing the legend "low down dirty shame" on the side doors. The informant further asserted that when the defendant was not at home, but was driving his car "usually, if not always" he stashed a quantity of heroin under his steering wheel cover to conceal it. Finally, the informant indicated that the defendant could be found in the south end of Waterbury.
Detective Moynihan sought to corroborate the informant's information by checking the police department computer and was able to identify the defendant's address as 152 Charles Street, which is in the south end of Waterbury. Detective Moynihan then drove past the defendant's residence and noted that a blue Toyota automobile was parked in the driveway. He testified that the car's side door bore the legend "low-down dirty shame," and that he obtained the car's license number. Detective Moynihan checked CT Page 7041 the car's registration through the NICC computer and verified the defendant's nicknames through police intelligence information. He checked the records of both the defendant and informant. Both had been arrested for narcotics violations but Detective Moynihan was unsure whether either had been convicted of those charges.
On May 13, 1996, Detective Moynihan and Detective Jeffrey Fisher, another member of the Vice and Intelligence Division, were travelling together in an unmarked police car. Detective Fisher was driving when they spotted a blue Toyota travelling in the opposite direction on South Main Street. Both officers testified that the car bore the legend "low down dirty shame" on its side. Once the officers noticed the car, they made a U-turn and attempted to catch up with the defendant. They lost sight of his car and when they next saw it, it was travelling in a direction opposite theirs signifying that the defendant had turned. They cut across the road into his lane and when the defendant pulled his car over, they parked their car so as to obstruct his movement. At no time did the officers observe the defendant violating any motor vehicle laws.
The officers approached the defendant with their hands on their holsters. The defendant complied with Detective Fisher's instructions, exited the car and was patted down for weapons. He did not respond to use of the nicknames "666" or "Luigi" but appeared "nervous." They told him that they had had a threatening complaint lodged against him. Detective Moynihan then entered the car and checked for the presence of weapons. While searching he noted that a portion of a plastic bag protruded from the frame of the steering wheel cover and that the cover was "ajar." Detective Moynihan took off the steering wheel cover and found a bag containing 180 packets of white powder which later tested positive for heroin. The defendant was placed under arrest for possession of heroin with intent to sell in violation of General Statutes § 21a-277 (a). Detective Moynihan testified that the plastic bag protruding from the steering wheel cover was not conspicuous from outside the car, but was only apparent when the steering column was viewed from beneath, which required the viewing individual to be inside the car. Detective Moynihan further testified that during this entire confrontation with the defendant, the defendant was not free to leave. At no time did the defendant consent to the search and at no time was the defendant read his rights.
The defendant has asserted that the police officers seized CT Page 7042 the heroin without a warrant and that the warrantless search did not occur in circumstances which rise to the level of an exception to the warrant requirement. The defendant claims that Detective Moynihan had no knowledge of the informant's reliability and that Detective Moynihan failed to corroborate the information relayed, or inquire as to the basis of the informant's knowledge and that the totality of the circumstances does not provide probable cause to sustain the search. Terry v.Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
A warrantless search is per se unreasonable under theFourth Amendment. State v. Lewis, 220 Conn. 602, 609, 600 A.2d 1330
(1991); State v. Copeland, 205 Conn. 201, 209, 530 A.2d 603
(1987); Article First § 7 of the Connecticut Constitution. While there are exceptions to this premise, the court finds that none exist here.
It is indisputable that in the present case the defendant was "seized" by Detectives Moynihan and Fisher when they cut off his car and prevented him from continuing on his way. "Stopping an automobile and detaining its occupants constitutes a seizure within the meaning of the fourth and fourteenth Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." (Citations omitted; internal quotation marks omitted.) State v. Sailor, 33 Conn. App. 409, 416,635 A.2d 1237 (1994); Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391,59 L.Ed.2d 660 (1979). Such a stop also is a "seizure" for purposes of Article First, § 7 of the Connecticut Constitution. State v. Lamme, 216 Conn. 172, 579 A.2d 484 (1990). A seizure occurred when the detectives boxed in the defendant's car so that it could not be driven from the area. State v.Sailor, supra, 33 Conn. App. 416.
Having determined that a seizure of the defendant took place, the court must now address the question of whether that seizure was based on a reasonable and articulable basis of suspicion.State v. Oquendo, 223 Conn. 635, 653, 613 A.2d 1300 (1992). "It is well established that the fourth amendment to the United States constitution allows a police officer to detain an individual briefly for investigative purposes if the officer has a reasonable and articulable suspicion that the individual is engaged in criminal activity." (Internal quotation marks omitted.) State v. Cofield, 220 Conn. 38, 44, 595 A.2d 1349
(1991), citing, Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412,110 L.Ed.2d 301 (1990). Article First, §§ 7 and 9 of our CT Page 7043 state constitution also permit a police officer in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes even though there is no probable cause to make an arrest. State v. Oquendo, supra,223 Conn. 654 "In determining whether the detention was justified in a given case, a court must consider if based upon the whole picture the detaining officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity. A court reviewing the legality of a stop must therefore examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom." (Citations omitted; internal quotation marks omitted.) State v. Oquendo, supra, 223 Conn. 654; Terry v.Ohio, supra, 392 U.S. 1.
In the present case, the detectives claim that a threatening complaint which was purported to have been lodged against the defendant, as well as information provided them by a confidential informant were enough to give them a reasonable and articulable suspicion that the defendant committed or was about to commit a crime and that therefore the Terry-type stop was appropriate. The state further asserts that once the detectives stopped the defendant's car they were free to search it because they reasonably believed that it contained weapons. The state's final assertion is that it was during, or just after, the alleged weapons search that Detective Moynihan saw a part of a plastic bag protruding from the steering column and discovered the heroin which is the subject of the defendant's motion to suppress. The court finds there is no basis for the state's assertions.
First, the detectives conceded that they intended to search the car when they pulled the defendant over as part of an investigatory stop. Detective Moynihan testified that the search was directed only to the presence of the firearms based on the threatening complaint. If such were the case, then once the court determined that the Terry-type stop was valid, then it would only have to find that the detective's actions in searching the car for weapons were based on a reasonable suspicion that there were weapons present. State v. Kyles, 221 Conn. 643, 660, 607 A.2d 355
(1992); Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469,77 L.Ed.2d 1201 (1983).
The officers were clearly acting upon the tip of the confidential informant with regard to the transport of heroin when they stopped the defendant's car. Detective Moynihan had CT Page 7044 supposedly processed a threatening complaint made against the defendant by an individual who received a photograph with a "hole in it" together with an AK 47 bullet. The detectives stopped the car and instituted a search for weapons claiming the complaint they received regarding the bullet hole in the photograph gave them a reasonable suspicion that weapons would be in the car.State v. Kyles, supra, 221 Conn. 660; Michigan v. Long, supra,463 U.S. 1032. They had no information that Rivera carried weapons in the car; no search or arrest warrant was obtained in connection with the complaint; no corroborating evidence of a police investigation was offered; and Detective Moynihan gave no information regarding the complainant, the nature of the complainant's relationship with the defendant, the time at which the incident occurred, the circumstances under which the complaint was made or the nature and extent of any police investigation into the threatening incident. Therefore, there was no evidence from which the court could determine the reliability and adequacy of the threatening complaint. Furthermore, though the detectives informed the defendant that he was being stopped because of the threatening complaint, the defendant was never questioned by the detectives about that complaint. The court cannot consider the subjective motives of the police in making this stop; Whren v. U.S., ___ U.S. ___, 116 S.Ct. 1769,135 L.Ed.2d 89 (1996); however, the court finds that this reason for the stop was pretextual at best even when viewed objectively. Therefore, the court finds that it does not form the basis for justifying the Terry-type stop and search of the defendant's car.[1]
The only other evidence offered by the state as providing a reasonable and articulable suspicion for the detectives to perform a Terry-type stop was the information provided by the confidential informant. In assessing the validity of an informant's tip, the court must apply a "totality of the circumstances" analysis as set out in Illinois v. Gates, 462 U.S. 213,103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and adopted by our supreme court in State v. Barton, 219 Conn. 529, 594 A.2d 917
(1991). Such an analysis requires, inter alia, that the court weigh the "veracity," "reliability," and "basis of knowledge" of the informant. State v. Barton, supra, 219 Conn. 539-40.
The court finds the following additional facts. Detective Moynihan was familiar with the informant for approximately two years through past arrests and other police officers. However, there was no evidence that these past arrests were arrests caused CT Page 7045 by confidential information provided by him to other policemen. Certainly, Detective Moynihan had not personally worked with the confidential informant on a one-on-one basis. The informant had not provided Detective Moynihan with any information that had led to a conviction, nor had he testified in a criminal prosecution as an informant for Detective Moynihan nor had he provided information upon which Detective Moynihan had ever sought a search or arrest warrant.
Nevertheless, Detective Moynihan found the confidential informant reliable because he claimed to have participated with the defendant in drug deals when the defendant was mobile in his car. On such occasions, when the defendant was making deliveries to other drug dealers in the city, the informant claimed that he carried drugs concealed underneath the steering wheel cover. The informant also claimed that Rivera was "the boss." The state argues that this declaration against penal interest gives reliability to the informant's report. Furthermore, police files showed the defendant had been arrested on drug charges although Detective Moynihan did not recall if the defendant had been convicted. Detective Moynihan familiarized himself with photographs of the defendant from the police booking files.
Detective Moynihan met with the confidential informant six times over the two weeks before the arrest, the last time approximately two days earlier. During those two days Detective Moynihan made no attempt to implement surveillance of the defendant, his residence or his car nor made any attempt to obtain a search warrant. There was no attempt to make an undercover buy of drugs. He made no attempt to ascertain where these drugs were when they were not in the car. Questions abound: where were the drugs before Rivera got into the car? Did someone else place them there for Rivera to distribute? Was the car the only place where Rivera and the drugs could be linked together? Or was it simply a question of searching the car in the hopes it would be covered by a exception to the warrant requirement?
Detective Moynihan's first of six contacts with the informant occurred at the police station. Detective Moynihan was unclear as to the circumstances under which he met the informant and was very reluctant to testify about them. His reluctance and evasiveness detracted from the weight the court could accord his testimony. The informant was not in a cell or brought from a cell nor under arrest but was paid $50 for his information. He told the police that he had a "heroin habit" but Detective Moynihan CT Page 7046 understood his motivation for providing information to get cash and to "get more drugs off the street." He could not give the police information as to specific times and locations of the defendant's drug transactions as he only knew that the drugs were transported under the steering wheel cover. The court heard no further evidence as to where these other conversations occurred, how long they took, or under what circumstances they occurred. The court finds the connection to the confidential informant limited at best.[2]
The court finds that the above evidence provides insufficient indicia of the informant's reliability for it to be the basis of the state's reasonable and articulable suspicion that the defendant was involved in criminal activity or that the defendant may have been carrying a weapon at the time of his stop. Detective Moynihan had little to no personal experience with or knowledge of the informant's reliability and made little attempt to bolster that knowledge. Furthermore, Detective Moynihan failed to sufficiently corroborate the information that was relayed to him by the informant. Finally, the only evidence submitted as a basis of the informant's knowledge was his own assertion that he once distributed narcotics for the defendant. Without any attempts on the part of the police to flesh out or corroborate the informant's story, the court is hesitant to find it alone a compelling basis for his knowledge. Therefore, under the totality of the circumstances as outlined above, the confidential informant's tip was not, and is not, adequate to provide the detectives with a reasonable and articulable suspicion to perform a Terry-type stop of the defendant. The state has failed to show that the detectives had a reasonable and articulable basis of suspicion which would allow them to perform a Terry-type stop of the defendant in the first place. State v. Oquendo, supra,223 Conn. 654; Terry v. Ohio, supra, 392 U.S. 1.
Since the detectives lacked a reasonable and articulable suspicion to even stop the defendant and search his car for weapons in the first place, it is axiomatic that they lacked probable cause to believe that contraband or evidence of a crime would be found in the defendant's car. As a result, the court can come to no other conclusion but that the warrantless search of the defendant's car was in violation of the fourth amendment of the United States constitution and Article First, § 7 of the Connecticut constitution. Under the exclusionary rule, evidence found to be the fruit of a prior illegal or unconstitutional search or seizure must be suppressed by the court. State v.
CT Page 7047Ortiz, 14 Conn. App. 493, 501, 542 A.2d 734 (1988). In the present case, all of the evidence which was derived from the illegal search and seizure of the defendant's car must be suppressed under the "fruit of the poisonous tree" doctrine. Such "fruit" includes the 180 glassine packets of heroin and, therefore, the defendant's motion to suppress is granted.
/S/ Sandra Vilardi Leheny, J. SANDRA VILARDI LEHENY